UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM BEAUMONT HOSPITAL and SOUTH
OAKLAND ANESTHESIA ASSOCIATES, P.C.,

      Plaintiff,

v.                                               Case No. 09-CV-11941

MEDTRONIC, INC.,

      Defendant.
                                         /

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Plaintiffs William Beaumont Hospital ("Beaumont") and South Oakland Anesthesia Associates, P.C. ("SOAA"), initiated this action on May 21, 2009. Plaintiffs seek contribution from Defendant Medtronic, Inc. ("Medtronic") under Mich. Comp. Laws § 600.2925a for amounts Plaintiffs paid to Kathy Cober's family to settle a tort claim arising out of a medical procedure involving one of Medtronic's medical devices. On June 11, 2009, Medtronic moved to dismiss the complaint pursuant to Rule 12(b)(6). The next day, Plaintiffs amended their complaint. Pending before the court is Medtronic's June 26, 2009 "Motion to Dismiss First Amended Complaint." Having reviewed the briefs, the court concludes a hearing on this motion is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will deny Medtronic's motion.

## I.  BACKGROUND[1]

This contribution action arises out of the "accidental administration of an overdose of medication to Kathy Cober" when an SOAA anesthesiologist at Beaumont Hospital attempted to refill a pain pump manufactured by Medtronic.  (Am. Compl. ¶¶ 6,7.)  Approximately two to three weeks before the incident, a representative of Medtronic offered to provide free samples of "pain pump refill kits" for use in refilling Medtronic's implanted pain pumps.  (*Id.* ¶ 8.)  Medtronic then delivered three free samples to Beaumont.  (*Id.*)  Only two, however, were "refill kits," while one was a "catheter access kit."  (*Id.* ¶ 10.)  "Refill kits" are used to refill Medtronic's pain pumps, but "catheter access kits" are used for a different purpose.  (*Id.* ¶ 13.)  A representative of Medtronic, Provvidenza Cucchiara, later admitted that a "catheter access kit" should not have been delivered to the Beaumont Department of Anesthesia because "such kits were used primarily for diagnostic procedures, not for pain management."  (*Id.*)

The underlying incident occurred on April 15, 2005.  On that date, an SOAA anesthesiologist at Beaumont attempted to perform a procedure to refill Ms. Cober's pain pump, which had been implanted in her abdomen years earlier by the University of Michigan Hospital.  (*Id.* ¶ 7.)  A Beaumont nurse retrieved one of the free samples delivered by Medtronic.  (*Id.*)  The nurse, however, retrieved the "catheter access kit," instead of a "refill kit," believing the "catheter access kit" was "suitable to use as a 'refill kit' for this older model pain pump" based on the statements by Medtronic's agent that all three kits were "suitable for use in refilling Medtronic implanted pain pumps."  (*Id.* ¶¶

---

[1]The relevant background facts are taken from Plaintiff's June 12, 2009 First Amended Complaint and are accepted as true for purposes of this motion.

10, 11.)  As a result of the use of the "catheter access kit," the medication was delivered directly into Ms. Cober's intrathecal space causing an overdose.  (*Id.* ¶ 12.)

The family of Ms. Cober ("Cober Plaintiffs") sued Beaumont, SOAA, and others in Oakland County Circuit Court claiming damages arising out of the incident ("Cober Litigation").  (*Id.* ¶ 14.)  Medtronic was made aware of the incident and the lawsuit.  (*Id.* ¶ 17.)  Throughout the Cober Litigation, Medtronic communicated with the Cober Plaintiffs and participated in discovery, including requesting and receiving a copy of the deposition of the SOAA aneshesiologist, providing documents in response to a subpoena from the Cober Plaintiffs, and having counsel attend the deposition of Ms. Cucchiara.[2]  (*Id.*)

Counsel for Beaumont and SOAA invited Medtronic to participate in discussions to settle the Cober Litigation.  (*Id.* ¶ 22.)  On May 20, 2008, counsel for Beaumont and SOAA wrote to Medtronic, "We invite and ask you to participate in early settlement of this matter."  (*Id.*)  Medtronic refused to join in the settlement negotiations.  (*Id.*)  On May 29, 2008, Beaumont and SOAA settled the case with the Cober Plaintiffs.  (*Id.* ¶ 23.)  The settlement included a release of the Cober Plaintiffs rights against Medtronic.  (*Id.*)  On May 21, 2009, Plaintiffs initiated the present action seeking contribution from

---

[2] The Cober Plaintiffs subpoenaed records relating to kits provided by Medtronic to Beaumont in the four and half months prior to the incident.  (*Id.* ¶ 18.)  At the deposition of Ms. Cucchiara, Medtronic's counsel denied that there were any invoices showing the delivery of the kits to Beaumont.  (*Id.* ¶ 19.)  After Beaumont and SOAA settled with the Cober Plaintiffs, Medtronic revealed that it did indeed have invoices showing the delivery of the kits, and that the kits were delivered to Beaumont two weeks prior to the incident.  (*Id.* ¶ 20.) Greg Messacar, one of Medtronic's employees, was identified as the person ordering the free samples and directing that they be shipped to the Beaumont Department of Anesthesia.  (*Id.* ¶ 8.)

Medtronic for "Medtronic's allocable share of fault in causing the injury to Ms. Cober." (*Id.* ¶ 28.)  Medtronic filed a motion to dismiss pursuant to Rule 12(b)(6).

## II.  STANDARD

When ruling on a motion to dismiss pursuant to 12(b)(6) of the Federal Rules of Civil Procedure, the court must construe the complaint in a light most favorable to the plaintiff and accept all the factual allegations as true.  *Evans-Marshall v. Board of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005); *Rossborough Mfg. Co. v. Trimble,* 301 F.3d 482, 489 (6th Cir. 2002).  In doing so, "the court must draw all reasonable inferences in favor of the plaintiff."  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  Yet, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Although a heightened fact pleading of specifics is not required, the plaintiff must bring forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 129 S. Ct. at 1950.

Though decidedly generous, this standard of review does require more than the bare assertion of legal conclusions.  *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

> [A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the complaint's allegations are true.

*Twombly*, 550 U.S. at 555 (citations omitted).  Further, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

4

*Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on different grounds by *Twombly*, 550 U.S. 544). In application, a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Lillard*, 76 F.3d at 726 (citation omitted). A court cannot grant a motion to dismiss under Rule 12(b)(6) based upon its disbelief of a complaint's factual allegations. *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995).

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)).

### III.  DISCUSSION

#### A.  The Original Complaint

As an initial matter, the court finds that Plaintiffs acted within their rights by filing an amended complaint. Federal Rule of Civil Procedure 15 allows a party to amend its complaint once as a matter of course any time before being served with a responsive pleading. Fed. R. Civ. P. 15(a)(1)(A). Motions and pleadings are differentiated by Rule 7, which defines pleadings, exclusively, as complaints (including third party complaints); answers; answers to crossclaims, counterclaims, and third party complaints; and, if the court orders one, a reply to an answer. Fed. R. Civ. P. 7(a); *see also Yuhasz v. Brush Wellman, Inc.,* 341 F.3d 559, 569 (6th Cir. 2003) (finding that Rule 7 distinguishes between pleadings and motions in determining what qualifies as "responsive pleadings" under Rule 15). Thus, "[a] motion to dismiss is not considered a responsive pleading

5

under Rule 15(a)."  *Winget v. JP Morgan Chase Bank, N.A.,* 537 F.3d 565, 574 (6th Cir. 2008) (citing *Ohio Cas. Ins. Co. v. Farmers Bank of Clay*, 178 F.2d 570, 573 (6th Cir. 1949)).

As applied in this case, therefore, Plaintiffs were free to file an amended complaint without leave of court, even after Defendant moved to dismiss the original complaint, because no answer has been filed.  *See id.*

### B.  The First Amended Complaint

Michigan provides for a contribution action "when 2 or more persons become jointly or severally liable in tort for the same injury to a person."  Mich. Comp. Laws § 600.2925a(1).  A tortfeasor can bring a contribution action only if he has "paid more than his pro rata share of the common liability."  *Id.* § 600.2925a(2).  A tortfeasor is entitled to contribution even if that tortfeasor settles the underlying claim, *Gerling Konzern Allgemeine Versicherungs AG v. Lawson*, 693 N.W.2d 149, 158 (Mich. 2005); however, the contribution statute imposes additional requirements on tortfeasors who settle, *id.* § 600.2925a(3).  The elements of a contribution claim by a settling tortfeasor are:

> (1) there must be joint liability on the part of the plaintiff and defendant, (2) the plaintiff must have paid more than the plaintiff's pro-rata share of the common liability, (3) the settlement entered into by the plaintiff must extinguish the liability of the defendant, (4) a reasonable effort must have been made to notify the defendant of the pendency of the settlement negotiations, (5) the defendant must be given a reasonable opportunity to participate in settlement negotiations, and (6) the settlement must be made in good faith.

*Klawiter v. Reurink*, 492 N.W.2d 801, 803 (Mich. Ct. App. 1992) (per curiam).

Medtronic argues that Plaintiffs have not stated a claim because they have not pled facts sufficient to establish (1) joint liability, (4) that Plaintiffs made a reasonable effort to notify Medtronic of the pendency of the settlement negotiations, and (5) that Plaintiffs gave Medtronic a reasonable opportunity to participate in the settlement negotiations. Medtronic does not contest that Plaintiffs have pled sufficient facts to establish the remaining elements.

### 1. Joint Liability

In order for a tortfeasor to recover contribution from another party, the two must share a common liability. *Lawson*, 693 N.W.2d at 153. Medtronic argues that it could not be liable for the procedure leading to Ms. Cober's overdose because it committed no tort against Ms. Cober and because Beaumont and SOAA's own negligence was the superseding cause of Ms. Cober's injuries. (Def.'s Mot. at 7-15.) Beaumont and SOAA argue that Medtronic was negligent in delivering a diagnostic kit to the anesthesiology department in the first place and in stating that the kit could be used for refill procedures. (Pl.'s Resp. at 6.)

The court must therefore determine whether Plaintiffs have pled facts sufficient to support a finding that Medtronic would have been liable to Ms. Cober. Plaintiffs' complaint alleges Medtronic would have been liable based on negligence. (Am. Compl. ¶ 24.) In evaluating this claim, the court does not accept as true bare legal conclusions from the complaint such as "Beaumont and SOAA have fulfilled all of the requirements to seek contribution" and "Medtronic's negligence was a proximate cause of the injury." *See Iqbal*, 129 S. Ct. at 1949. Instead, the court looks to whether Beaumont and SOAA

7

have alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### a. Negligence

"In order to establish a prima facie case of negligence, the plaintiff must prove: '(1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached that duty, (3) that the defendant's breach was a proximate cause of the plaintiff's damages; and (4) that the plaintiff suffered damages.'" *Terry v. City of Detroit*, 573 N.W.2d 348, 352 (Mich. Ct. App. 1997) (quoting *Baker v. Arbor Drugs, Inc.*, 544 N.W.2d 727 (Mich. Ct. App. 1996)). The parties do not dispute that Ms. Cober suffered damages as a result of the procedure.

### i. Duty and Breach

Medtronic argues that Beaumont and SOAA have not alleged facts sufficient to establish that Medtronic committed a tort against Ms. Cober. (Def.'s Mot. at 7.) It states that Beaumont is couching its independent claim for negligent misrepresentation or straight negligence as a contribution claim in order to avoid the statute of limitations. (Def.'s Mot. at 9 n.6.) In essence, Medtronic is arguing that any duty it owed regarding its agent's statements and the delivery of the kits was owed to Beaumont, not Ms. Cober, and therefore, Medtronic and Beaumont do not share common liability to Ms. Cober.

Michigan courts look to a number of factors in determining whether a duty exists, including:

> foreseeability of the harm, existence of a relationship between the parties involved, degree of certainty of injury, closeness of connection between the conduct and injury, moral blame attached to the conduct, policy of

> preventing future harm, and the burdens and consequences of imposing a duty and the resulting liability for breach.

*Baker*, 544 N.W.2d at 730 (holding that pharmacy owed a duty to customers to detect harmful drug interactions when it advertised a drug interaction detection system). In the duty context, "foreseeability 'depends upon whether or not a reasonable man could anticipate that a given event might occur under certain conditions.'" *Moore v. Sky Chefs, Inc.*, 79 F. App'x 130, 135 (6th Cir. 2003) (quoting *Samson v. Saginaw Prof'l Bldg., Inc.*, 224 N.W.2d 843, 849 (Mich. 1975)).

Applying the factors to the present case, Plaintiffs have alleged sufficient facts to support a finding that it was foreseeable that a patient would be harmed by Medtronic's actions. *See Baker*, 544 N.W.2d at 730. They alleged that Medtronic sent free samples to an anesthesiology department at a hospital and held the samples out for use in a refill procedure, when in fact one of the samples was not intended for such use. (Am. Compl. ¶¶ 8-13.) A reasonable person could anticipate that the samples would be used by the anesthesiology department resulting in certain harm to a patient. *See Moore*, 79 F. App'x at 135. While the connection between Medtronic and patient is not direct in that it was not the party that incorrectly used the catheter access kit on Ms. Cober, there is a sufficient connection between Medtronic and Ms. Cober because Medtronic supplied the samples with the intention that the samples be used on the hospital's patients. *See Baker*, 544 N.W.2d at 730. Also, although there is no direct relationship between Ms. Cober and Medtronic, Ms. Cober had Medtronic's product implanted in her at an earlier date. (Am. Compl. ¶ 7.) It is reasonable to impose a duty on Medtronic to not take actions which would harm patients regarding future procedures involving its

9

previously implanted devices.  The policy of preventing future harm supports this notion, in particular when the burden placed on Medtronic is slight and the potential harm to the patient is great.  *See Baker*, 544 N.W.2d at 730.  The remaining factor involving moral blame does not alter the analysis in finding that Plaintiffs have alleged sufficient facts to support a finding that Medtronic owed a duty to foreseeable patients receiving procedures involving its kits, including Ms. Cober.  *See id.*

A breach occurs when a party does not exercise "reasonable care" under the circumstances.  *Case v. Consumers Power Co.*, 615 N.W.2d 17, 18 (Mich. 2000).  Plaintiffs have alleged sufficient facts to support a claim that a breach occurred based on their allegation that the catheter access kits should have never been delivered to an anesthesiology department and that Medtronic's agent represented that the kits were for use in a refill procedure.  (Am. Compl. ¶¶ 8-13.)  These facts, if proven, would support a finding that Medtronic did not exercise reasonable care when sending the kits to Beaumont.

### ii.  Proximate Cause

Medtronic argues that the facts as alleged by Beaumont and SOAA fail to establish that Medtronic's actions were the proximate cause of Ms. Cober's injuries. (Def.'s Mot. at 15.)  Specifically, it argues that the Beaumont nurse's negligence in selecting the wrong kit was the superseding cause of Ms. Cober's injury.  (*Id.*)

In order for a defendant's breach to constitute the proximate cause of an injury, the injury must be "the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." *Detroit City Gas Co. v. Syme*, 109 F.2d 366, 269-70 (6th Cir. 1940).  The defendant's

breach is a proximate cause if it is a "substantial factor" in causing the injury. *Coy v. Richard's Indus., Inc.*, 428 N.W.2d 734, 737 (Mich. Ct. App. 1988). But even if the defendant's actions are a "substantial factor" in bringing about the harm, they will not be deemed a proximate cause if an intervening act of negligence is determined to be a superseding cause. *Id.* An intervening act of negligence is "one which comes into active operation in producing harm to another after the negligence of the defendant." *Id.* "Generally, when there are not policy considerations involved, the question whether an intervening act of negligence is a superseding cause relieving the defendant of liability is a question for the jury." *Id.; Taylor v. Wyeth Labs., Inc.*, 362 N.W.2d 293, 300 (Mich. Ct. App. 1984) ("The courts of this state have held that whether an intervening negligent act of a third person constitutes a superseding proximate cause is a question for the jury."); *see also Fleck v. Titan Tire Corp.*, 177 F. Supp. 2d 605, 624 (E.D. Mich. 2001) (noting that "the significance of an intervening cause is generally left to the jury under Michigan law"). Michigan courts, however, have decided the issue of superseding cause as a matter of law after hearing the evidence. *See Formella v. Ciba-Geigy Corp.*, 300 N.W.2d 356 (Mich. Ct. App. 1980) (per curiam) (upholding a directed verdict for the defendant drug manufacturer based on finding that the prescribing doctor's negligence was a superseding cause that relieved the drug manufacturer of any liability to the patient).

Plaintiffs' allegations are sufficient to support a finding that Medtronic's sending a catheter access kit to Beamont's anesthesiology department and stating it was for use in a refill procedure was a "substantial factor" in causing the harm to Ms. Cober. *Coy*, 428 N.W.2d at 737. After further factual development, a reasonable jury could find that

the "natural and probable consequence" of this action was that the wrong kit would be used on a patient, resulting in serious injury. *Detroit City Gas Co,* 109 F.2d at 369. Accordingly, Plaintiffs' complaint alleges sufficient facts to establish proximate cause.

Nonetheless, the facts as alleged by Plaintiffs do raise a serious causation issue regarding whether the nurse and anesthesiologist's negligence constitute a superseding cause relieving Medtronic of liability. *See Formella v. Ciba-Geigy Corp.*, 300 N.W.2d at 358-59. However, whether an intervening negligent act constitutes a superseding cause is typically a decision for the jury in Michigan. *Coy*, 428 N.W.2d at 737; *Taylor*, 362 N.W.2d at 300; *see also Fleck*, 177 F. Supp. 2d at 624. This determination is not properly made at the Rule 12(b)(6) stage; further factual development is necessary, and the case should be allowed to proceed to discovery.

### b. Negligent Representation

Medtronic argues that Plaintiffs are asserting a negligent misrepresentation claim. (Def.'s Mot. at 11.) Negligent misrepresentation requires "proof that a party justifiably relied to his detriment on information provided without reasonable care by one who owed the relying party a duty of care." *Law Offices of Lawrence J. Stockler, P.C. v. Rose*, 436 N.W.2d 70, 81 (Mich. Ct. App. 1989). Medtronic argues that Rule 9(b) applies to negligent misrepresentation claims, and that Plaintiffs have failed to meet Rule 9(b)'s specificity requirements by failing to plead "who, when, and where" with regard to the alleged statements by Medtronic's representative. (Def.'s Mot. at 6-7, 11.)

Beaumont and SOAA do not assert a negligent misrepresentation claim. Instead, they are asserting a contribution claim. An element of a contribution claim is common liability, and Plaintiffs are alleging a negligence cause of action as the basis for

12

common liability. This negligence claim does incorporate alleged statements made by Medtronic's agent, but the claim also incorporates the alleged fact that a "catheter access kit" should not have been sent to an anesthesiology department in the first place. Indeed, a negligent misrepresentation claim could not serve as the basis of joint liability because Ms. Cober could not bring this claim against Medtronic. The alleged misrepresentation was not made to her and she did not justifiably rely on the representation. *See Rose*, 436 N.W.2d at 81. Accordingly, Plaintiffs' claim of common liability is not based on a negligent misrepresentation cause of action. Therefore, even if Rule 9(b) did apply to negligent misrepresentation cases, it would not be applicable here.

### c. Preemption

If a device has received premarket approval by the Food and Drug Administration ("FDA"), then federal law preempts common-law tort claims that rely "upon 'any requirement' of [Michigan] law applicable to the catheter that is 'different from, or in addition to' federal requirements and that 'relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device.'" *Riegel v. Medtronic, Inc.*, 128 S. Ct. 999, 1007 (2008) (quoting 21 U.S.C. § 360k(a)).

The court takes notice that Medtronic's SyncroMed II Programmable Drug Infusion System, which includes its catheter access kit, received premarket approval from the Food and Drug Administration (FDA).[3] *See Amini*, 259 F.3d at 502. Thus,

---

[3] U.S. Food and Drug Administration, September 2003 PMA Approvals, http://www.fda.gov/MedicalDevices/ProductsandMedicalProcedures/DeviceApprovalsandClearances/PMAApprovals/ucm111483.htm (last visited Aug. 26, 2009).

Medtronic correctly argues that any claim by Beaumont and SOAA premised on an inadequate warning label is preempted by the Medical Device Amendments of 1976. *See Riegel*, 128 S. Ct. at 1006-1009.  Plaintiffs do seem to suggest that the warning was inadequate by including in their complaint an excerpt from a letter from Medtronic to Ms. Cober.  (Am. Compl. ¶ 15.)  In the letter, Medtronic tells Ms. Cober that based on the incident, Medtronic submitted a strengthened label to the FDA for approval, and the FDA approved the strengthened label.  (*Id.*)  Any claim by Plaintiffs based on this fact would be preempted.  *See Riegel*, 128 S. Ct. at 1006-1009.  However, Plaintiffs' claim alleging joint liability is premised on Medtronic's alleged negligence in sending free samples to an anesthesiology department at a hospital and holding the samples out for use in a refill procedure, when in fact one of the samples was not intended for such use and should not have been sent to an anesthesiology department.  Plaintiffs do not allege a failure to adequately warn claim.  While the issue of whether the nurse's failure to read and follow the label may constitute a superseding cause in this case, the nurse's failure to read the label would merely serve as a way for Medtronic to avoid liability for its alleged prior negligence.  The adequacy of the label is not the basis for Beaumont and SOAA's allegations of Medtronic's negligence.

### 2.  Notice and Opportunity for Settlement

Medtronic argues that Plaintiffs failed to allege facts sufficient to demonstrate that Plaintiffs gave Medtronic "reasonable notice" and a "reasonable opportunity to participate" in the settlement negotiations.  (Def.'s Mot. at 16-18).  A settling tort-feasor cannot recover contribution if "[a] reasonable effort was not made to notify the contributee of the pendency of the settlement negotiations" or if "[t]he contributee was

not given a reasonable opportunity to participate in the settlement negotiations." Mich. Comp. Laws § 600.2925a(3)(b)-(c).  Failure to meet these statutory requirements "precludes the claim for contribution altogether." *St. Luke's Hospital v. Giertz*, 581 N.W.2d 665, 669 (Mich. 1998).  The defendant having notice of the underlying tort action is not enough; the defendant must be "put on notice that she would be called upon to defend as a potential contributee." *Klawiter*, 492 N.W.2d at 804.

Beaumont and SOAA allege that Medtronic was aware of the litigation with Ms. Cober and participated in the discovery process.  (Am. Compl. ¶ 17.)  Specifically, Beaumont and SOAA allege that Medtronic requested and received a copy of the anesthesiologist's March 24, 2008 deposition, had counsel present at the deposition of Ms. Cucchiara on April 4, 2008, and provided documents in response to a subpoena from the Cober Plaintiffs.  (*Id.*)  But notice of the underlying action alone is not enough. *Klawiter*, 492 N.W.2d at 804.  Plaintiffs, however, further allege that they wrote to Medtronic on May 20, 2008, stating, "We invite and ask you to participate in early settlement of this matter."  (Am. Compl. ¶ 22.)  This statement coupled with Medtronic's knowledge and participation in the litigation is sufficient to support a finding that reasonable notice and opportunity to participate in settlement was given.  Defendant provides no authority for finding that these actions fail to meet the statutory requirements as a matter of law.  Whether nine days is unreasonable in this case based on these circumstances is not a determination that can be made at the Rule 12(b)(6) stage.

Accordingly, Plaintiff has alleged facts sufficient to state a claim for contribution under Mich. Comp. Laws § 600.2925a.

## IV.  CONCLUSION

IT IS ORDERED that Defendant's motion to dismiss first amended complaint [Dkt. # 9] is DENIED.

    S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  August 31, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 31, 2009, by electronic and/or ordinary mail.

    S/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522