**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

WILLIAM BEAUMONT HOSPITAL and SOUTH
OAKLAND ANESTHESIA ASSOCIATES, P.C.,

      Plaintiffs,

v.                                                           Case No. 09-CV-11941

MEDTRONIC, INC.,

      Defendant.
                                         /

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S "MOTION TO COMPEL PRODUCTION OF DOCUMENTS"**

On April 21, 2010, the court denied Defendant Medtronic, Inc.'s motion to compel as to the first, second, and fifth entries on Plaintiff's peer review privilege log.  (4/21/10 Order at 20.)  The court further directed Plaintiffs William Beaumont Hospital and Oakland Anesthesia Associates, P.C. to file additional documentation as to the third, fourth, and sixth entries on their privilege log.  (*Id.* at 20-21.)  Plaintiffs filed additional exhibits on April 29, 2010.  Having reviewed the additional material, the court will grant Defendant's motion as to the third entry on Plaintiffs' peer review privilege log and deny Defendant's motion as to all other entries.

**I.  STANDARD**

**A.  Peer Review Privilege**

Michigan's Public Health Code requires hospitals "to review their professional practices and procedures to improve the quality of patient care and reduce morbidity and mortality."  *Gallagher v. Detroit-Macomb Hosp. Ass'n*, 431 N.W.2d 90, 94 (Mich. Ct.

App. 1988). To facilitate this review, hospitals must establish peer review committees. *Dorris v. Detroit Osteopathic Hosp. Corp.*, 594 N.W.2d 455, 463 (Mich. 1999).

Specifically, hospitals must:

> assure that physicians and dentists admitted to practice in the hospital are organized into a medical staff to enable an effective review of the professional practices in the hospital for the purpose of reducing morbidity and mortality and improving the care provided in the hospital for patients. The review shall include the quality and necessity of the care provided and the preventability of complications and deaths occurring in the hospital.

Mich. Comp. Laws § 333.21513(d).

To maximize the effectiveness of this review, Michigan has enacted two statutes that create a peer review privilege for records collected at the direction of a peer review committee. Under Mich. Comp. Laws § 333.20175(8),

> [t]he records, data, and knowledge collected for or by individuals or committees assigned a professional review function in a health facility or agency, or an institution of higher education in this state that has colleges of osteopathic and human medicine, are confidential, shall be used only for the purposes provided in this article, are not public records, and are not subject to court subpoena.

Mich. Comp. Laws § 333.20175(8). Similarly, Mich. Comp. Laws § 333.21515 provides that "[t]he records, data, and knowledge collected for or by individuals or committees assigned a review function described in this article are confidential and shall be used only for the purposes provided in this article, shall not be public records, and shall not be available for court subpoena." Mich. Comp. Laws § 333.21515.

To determine whether a record is privileged, "the court should consider the hospital's bylaws, internal rules and regulations and whether the committee's function is that of retrospective review for purposes of improvement and self-analysis and thereby protected, or part of current patient care." *Gallagher*, 431 N.W.2d at 94. The records

must have been collected for or by the peer review committee. *Marchand v. Henry Ford Hosp.*, 247 N.W.2d 280, 282 (Mich. 1976). The fact that information is submitted to a peer review committee does not mean that it satisfies the collection requirement so as to make it privileged. *Monty v. Warren Hosp. Corp.*, 366 N.W.2d 198, 202 (Mich. 1985). Also, the protection afforded quality assurance and peer review reports does not depend on the type of claim asserted by the proponent of the subpoena. *Ligouri v. Wyandotte Hosp. & Med. Ctr.*, 655 N.W.2d 592, 595 (Mich. Ct. App. 2003).

Although privileges are to be narrowly construed, *Centennial Healthcare Mgmt. Corp. v. Mich. Dep't of Consumer & Indus. Servs.*, 657 N.W.2d 746, 754 (Mich. Ct. App. 2003), the "Legislature protected peer review documents in broad terms." *In re Lieberman*, 646 N.W.2d 199, 202-03 (Mich. Ct. App. 2002) (stating that the peer review privilege statute "demonstrates that the Legislature has imposed a comprehensive ban on the disclosure" of peer review material). Indeed, peer review documents

> are not subject to disclosure in a criminal investigation pursuant to a search warrant, *In re Investigation of Lieberman*, 250 Mich. App. 381, 646 N.W.2d 199 (2002), a civil suit concerning an assault on a hospital patient, *Dorris, supra*, a medical malpractice claim, *Gallagher v. Detroit-Macomb Hosp. Ass'n*, 171 Mich. App. 761, 431 N.W.2d 90 (1988), or an investigation by the Board of Medicine, *Attorney General v. Bruce*, 422 Mich. 157, 369 N.W.2d 826 (1985).

*Manzo v. Petrella*, 683 N.W.2d 699, 705 (Mich. Ct. App. 2004). The Michigan Legislature intended to "*fully* protect quality assurance/peer review records from discovery." *Ligouri*, 655 N.W.2d at 594 (emphasis in original).

The rationale for this strong protection of peer review material is that:

"[c]onfidentiality is essential to effective functioning of these staff meetings; and these meetings are essential to the continued improvement in the care and treatment of patients. Candid and conscientious

3

> evaluation of clinical practices is a *sine qua non* of adequate hospital care. To subject the discussions and deliberations to the discovery process, without a showing of exceptional necessity, would result in terminating such deliberations."

*Attorney General v. Bruce*, 369 N.W.2d 826 (Mich. 1985) (quoting *Bredice v. Doctors Hosp., Inc.*, 50 F.R.D. 249, 250 (D.D.C. 1970)). Without confidentiality, "the willingness of hospital staff to provide their candid assessment will be greatly diminished," which "will have a direct effect on the hospital's ability to monitor, investigate, and respond to trends and incidents that affect patient care, morbidity, and mortality." *Dorris*, 594 N.W.2d at 463. "By insuring that the proceedings remain confidential, the Legislature has provided strong incentive for hospitals to carry out their statutory duties in a meaningful fashion." *Attorney General v. Bruce*, 335 N.W.2d 697, 702 (Mich. Ct. App. 1983).

## II.  DISCUSSION

### A.  Anesthesia Department Quality Assurance Review

On their peer review privilege log, Plaintiffs assert that an Anesthesia Department Quality Assurance Review as well as accompanying investigative notes, memos, and communications are protected by the peer review privilege. (Pls.' Suppl. Filing Ex. A, Entry No. 3.) These documents were prepared by the Department of Anesthesia Quality Assurance Director and were given to the Patient Safety Officer and the Department Chairman. (*Id.*) In their supplemental filing, Plaintiffs state that "[d]espite diligent efforts, William Beaumont Hospital has been unable to locate documents related to Entry No. 3 on Exhibit A and thus is unable to supply the supplemental information requested by the Court." (Pls.' Suppl. Filing at 2 n.1.)

4

In the court's previous order, it stated that failure to file additional information by the deadline "will result in Defendant's motion being granted as to these documents." (4/21/10 Order at 21.)  The party asserting a privilege bears the burden of demonstrating that the privilege applies.  *See In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 294 (6th Cir. 2002).  Because Plaintiffs have not demonstrated that these documents were collected for or by a peer review committee, the court will grant Defendant's motion as to Entry No. 3 on Plaintiffs' April 29, 2010 peer review privilege log.

### B.  Summary FDA Site Visit

Regarding the document entitled "Summary FDA site visit," Plaintiffs have attached an affidavit of Kay Beauregard, Vice President of William Beaumont Hospital, Royal Oak.  (Pls.' Suppl. Filing Ex. H.)  Beauregard drafted the Summary FDA Site Visit document when she was "Administrative Director of William Beaumont Hospital, Royal Oak with administrative responsibility for Patient Safety and Hospital Quality."  (*Id.* ¶ 1.)  In her affidavit, Beauregard states,

> In my capacity as a participant in Root Cause Analysis of SE 05-03, member of the Performance Improvement Steering Committee (Royal Oak) and Administrative Director, Patient Safety and Hospital Quality, I prepared and distributed a summary of the site visit by the Food and Drug Administration on July 19, 2005 to the Chief Medical Officer, Chief Executive Officer, Patient Safety Officer, Senior Administrators and members of the Root Cause Analysis committee, which summary, based on Beaumont's policies and Corporate Performance Improvement and Patient Safety Plan, is protected by the peer review privilege.

(*Id.* ¶ 6.)

Hospital occurrences involving "death or serious physical or psychological injury" are deemed Sentinel Events, for which a root cause analysis must be performed.  (Pls.'

Resp. Exs. B, D.) The root cause analysis "is a process for identifying the basic reason or causal factor(s) for the Variance, which, if eliminated or corrected, would have prevented the Sentinel Event from occurring." (*Id.* Ex. D) The analysis is performed by a task force, consisting of "the organization's leadership and appropriate individuals involved in the processes and systems under review." (*Id.*) A final report of the root cause analysis must be presented to the Performance Improvement Steering Committee. (*Id.*) A report of the Sentinel Event involving Cathy Cober was prepared and presented to the Performance Improvement Steering Committee on July 15, 2005. (Pls.' Suppl. Filing Ex. H ¶ 5.)

The Performance Improvement Steering Committee was established pursuant to the Corporate Improvement and Patient Safety Plan, which has the purpose of establishing, authorizing, and providing "the structure for performance improvement and patient safety as an ongoing priority of William Beaumont Hospital." (*Id.* Ex. H.1.) The Committee must, among other things, "assure an optimal environment for the pursuit and coordination of performance improvement activities." (*Id.* ¶ 3.2.) The Committee is to emphasize "[i]mprovement of processes, measurement of outcomes, and uniformity of care." (*Id.*)

Beaumont's Performance Improvement Steering Committee is assigned a professional review function consistent with the statutory directive for hospitals to improve patient care and review the quality of care provided. *See* Mich. Comp. Laws § 333.21513(d). Similarly, as explained in the court's previous order, the task force performing the root cause analysis of the Sentinel Event constitutes a committee performing a professional review function. (4/21/10 Order at 12.) Beauregard did not

merely submit her summary of the FDA site visit to these peer review committees, which would "not satisfy the collection requirement so as to bring the information within the protection of the statute." *Monty*, 366 N.W.2d at 202.  Instead, it was in her capacity as a participant in these peer review committees that Beauregard prepared the summary.  (Pls.' Suppl. Filing Ex. H ¶ 6.)  Thus, the records, data, and knowledge assembled by Beauregard were "collected for or by" a professional review committee. *See* Mich. Comp. Laws §§ 333.20175(8), -.21515.  Accordingly, they are protected from discovery by the peer review privilege.

### C.  Physician Credential Files

Plaintiffs assert that the physician credential files of Dr. Michael Sikorsky and Dr. Craig McCardell, consisting of letters of recommendation, evaluations, questionnaires, and other materials, are protected from discovery by the peer review privilege.  (Pls.' Suppl. Filing Ex. A.)  In support, Plaintiffs have attached the "Bylaws of the Medical and Dental Staff of William Beaumont Hospital - Royal Oak."  (*Id.* Exs. B-E.)  The bylaws establish a Credentials and Qualifications Committee to evaluate Staff appointments, extension of privileges, and assignments to Departments.  (*Id.* Ex. D ¶ 9.2.)  The bylaws require the Credentials and Qualifications Committee to review applications for Medical Staff membership and clinical privileges and make a recommendation to the Medical Executive Board.  (*Id.* Ex. C ¶ 3.5.9.)  The Committee is to evaluate the "qualifications, competence or performance of a health care provider."  (*Id.* Ex. G, Aff. of Gordon J. Walker, Non-voting Member of the Credentials and Qualifications Committee, ¶ 3.).  Dr. Sikorsky's and Dr. McCardell's physician credential files were prepared by the Credentials and Qualifications Committee.  (*Id.* ¶ 6.)

The Michigan Court of Appeals has addressed the applicability of the peer review privilege to physician credentials files.  *Dye v. St. John Hosp. & Medical Center*, 584 N.W.2d 747 (Mich. Ct. App. 1998).  In *Dye*, the plaintiff filed a motion to compel the production of a doctor's "personnel/credentials file" in relation to her claim that the defendant hospital negligently extended staff privileges to the doctor.  *Id.* at 748.  In response, the hospital attached a copy of its bylaws and an affidavit from a doctor on the hospital's credentials committee.  *Id.*  These documents stated that the credentials committee was established "to review the professional practices in the hospital for the purpose[s] of reducing morbidity and mortality, improving the care provided patients in the hospital, and to insure that physicians are granted privileges consistent with their individual training, experience and other qualifications."  *Id.*  The documents also established that the credentials committee was required to review the "qualifications, competence, and performance of health care professionals seeking to work at defendant hospital."  *Id.*  After an in camera review of the file, the trial court ordered the hospital to produce a number of documents from the file.  *Id.*

On appeal, the Michigan Court of Appeals reversed the trial court's decision.  *Id.* at 752.  The Michigan Court of Appeals held that the peer review privilege protected from disclosure the doctor's credentials file.  *Id.* at 750.  The court rejected the plaintiff's argument that "materials relating to the provision of staff privileges are outside the purview of the statutes."  *Id.* at 749.  The court reasoned that the plain meaning of the statutory language supported the conclusion that the materials were not subject to discovery because they "were collected by or for its credentials committee, which exercises a professional review function."  *Id.*

Like the hospital in *Dye*, Plaintiffs have attached the hospital bylaws and an affidavit from a member of the Credentials and Qualifications Committee. Similar to the credential committee's functions in *Dye*, the Credentials and Qualifications Committee exercises a professional review function by reviewing the qualifications, competence and performance of doctors seeking staff appointments and hospital privileges. As in *Dye*, the documents at issue in this case include letters of recommendation and questionnaires which were collected for or by the Credentials and Qualifications Committee. Because the physician credential files of Dr. Sikorsky and Dr. McCardell constitute records, data, and knowledge collected by a committee with a professional review function, the peer review privilege protects against the disclosure of the contents. *See* Mich. Comp. Laws §§ 333.20175(8), -.21515.

### III.  CONCLUSION

IT IS ORDERED that Defendant's "Motion to Compel Production of Documents" [Dkt. # 24] is GRANTED IN PART and DENIED IN PART. It is GRANTED as to Entry No. 3 on Plaintiffs' April 29, 2010 peer review privilege log. It is DENIED as to all other entries on Plaintiffs' April 29, 2010 peer review privilege log.

    S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: May 17, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 17, 2010, by electronic and/or ordinary mail.

    S/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522