**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

WILLIAM BEAUMONT HOSPITAL and SOUTH
OAKLAND ANESTHESIA ASSOCIATES, P.C.,

        Plaintiffs,

v.                                                                     Case No. 09-CV-11941

MEDTRONIC, INC.,

        Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR A PROTECTIVE**
**ORDER AND GRANTING PLAINTIFFS' MOTION TO COMPEL**

Before the court is Defendant Medtronic, Inc.'s "Sealed Motion for a Protective

Order," filed on April 13, 2010, and Plaintiffs William Beaumont Hospital's and South

Oakland Anesthesia Associates, P.C.'s "Sealed Motion for Discovery Sanctions and to

Compel Discovery," filed on April 19, 2010.  A hearing on these motions is unnecessary.

*See* E.D. Mich. LR 7.1(e)(2).  For the reasons stated below, the court will deny

Defendant's motion and grant Plaintiffs' motion.

**I.  BACKGROUND**

On April 15, 2005, an anesthesiologist from Plaintiff South Oakland Anesthesia

Associates, P.C. ("SOAA") attempted to perform a procedure to refill Kathy Cober's

Medtronic pain pump at Plaintiff William Beaumont Hospital ("Beaumont").  (Am. Compl.

¶ 12.)  The procedure required the use of a "refill kit;" however, a Beaumont nurse

retrieved a "catheter access kit" instead.  (*Id.* ¶¶ 11, 13.)  The kit retrieved was one of

three free samples that Medtronic had previously shipped to Beaumont.  (*Id.* ¶ 8.)  As a

result of the use of the "catheter access kit," the medication was delivered directly into Ms. Cober's intrathecal space causing an overdose ("Cober Incident"). (*Id.* ¶ 12.)

The family of Ms. Cober ("Cober Plaintiffs") sued Beaumont, SOAA, and others in Oakland County Circuit Court claiming damages arising out of the incident ("Cober Litigation"). (*Id.* ¶ 14.)  Medtronic was made aware of the incident and the lawsuit and participated in discovery.[1]  (*Id.* ¶¶ 15, 17.)  Counsel for Beaumont and SOAA invited Medtronic to participate in discussions to settle the Cober Litigation, but Medtronic refused. (*Id.* ¶ 22.)  Medtronic's counsel sent a letter to counsel for Beaumont, SOAA, and Dr. McCardell, stating:

> You have failed to provide Medtronic reasonable notice of this purported claim, or reasonable opportunity to participate in any settlement discussions, as required under M.C.L.A. 300.2925a.  Your letter, which you mailed on May 20, 2008 to Mr. Arthur Collins, Jr., who is no longer Medtronic's CEO, was not received by Medtronic until May 21, 2008.  You chose only to mail copies of the letter to Joe Phillips and myself even though you have known for months that we represent Medtronic with respect to this matter.  As a result you provided Medtronic with two business days notice, just prior to the Memorial Day weekend, before the beginning of trial.  This is not reasonable notice and does not provide Medtronic with a reasonable opportunity to participate in settlement negotiations.  Your failure to provide reasonable notice precludes any claim for contribution under M.C.L.A. 300.2925a.
>
> Prior to sending your letter of May 20, 2008, you provided Medtronic no notice of any potential claim by your clients with respect to Ms. Cober's injuries.  To the contrary, you assured Mr. Phillips in a telephone conversation in March 2008 that you did not intend to attribute

---

[1] The Cober Plaintiffs subpoenaed records relating to kits provided by Medtronic to Beaumont in the four and half months prior to the incident.  (Am. Compl. ¶ 18.) Medtronic failed to produce an invoice showing the delivery of the three free kits during the Cober Litigation.  (Def.'s Resp. at 2.)  After Beaumont and SOAA settled with the Cober Plaintiffs, Medtronic revealed that it did indeed have an invoice showing the delivery of the kits.  (*Id.*)

to Medtronic any blame for Ms. Cober's injuries.  Medtronic relied on your assurances.

As a non-party, Medtronic does not have access to any records or deposition testimony regarding this matter.  At this late juncture, Medtronic has no way of assessing the reasonableness of any settlement you might enter with Ms. Cober.  Medtronic expressly reserves all of its rights to challenge the reasonableness of any settlement made between the parties.

Finally, any claim by your clients against Medtronic for indemnity or contribution is devoid of merit.  Medtronic disputes the factual assertions of your letter.  Moreover, the factual assertions of your letter, even if proven, would not render Medtronic liable for this unfortunate incident.

(Def.'s Mot. Ex. B.)

On May 29, 2008, Beaumont and SOAA settled the case with the Cober Plaintiffs.  (Am. Compl. ¶ 23.)  The settlement included a release of the Cober Plaintiffs' rights against Medtronic.  (*Id.*)  On May 21, 2009, Plaintiffs initiated the present action seeking contribution from Medtronic for "Medtronic's allocable share of fault in causing the injury to Ms. Cober."  (*Id.* ¶ 28.)

On March 5, 2010, Plaintiffs served Defendant with a "Notice of Taking Deposition of Medtronic, Inc." pursuant to Federal Rule of Civil Procedure 30(b)(6). (Def.'s Mot. Ex. D.)  The notice stated that Defendant was to designate a person "to testify on its behalf as to the subject matters listed on Exhibit A" at a deposition to be held on March 24, 2010 in Detroit.  (*Id.*)  Exhibit A contained nine topics, including the following topics which are the subject of the present motions:

6.  An explanation of the procedures employed by Medtronic to comply with the request for production of documents in connection with the deposition of Provvidenza (Xena) Cucchiara during the underlying Cober litigation.

7.  An explanation of the reason(s) why the Medtronic "invoice" attached hereto was not produced at the deposition of Provvidenza (Xena) Cucchiara during the underlying Cober litigation.

. . .

9.  An explanation of why Medtronic declined to participate in settlement discussions in the underlying Cober litigation when invited to do so.

(*Id.*)

Medtronic was provided a list of these topics on January 22, 2010, in a letter from Plaintiffs' counsel which included a "draft of the subject matters" to which the Rule 30(b)(6) deposition would be directed.  (Pls.' Reply Ex. A.)  Counsel for the parties then conferred regarding the status of discovery.  (*Id.*; Def.'s Resp. Ex. E.)  In an email to Plaintiffs' counsel on February 6, 2010, Defendant's counsel stated, "I will also discuss with my client the points you made concerning the final area of your 30(b)(6) request and will aim to get back to you on that this week as well."  (Def.'s Resp. Ex. E.)

On March 3, 2010, Defendant's counsel sent an email to Plaintiffs' counsel, stating, "We have been able to identify corporate designee witnesses for all but one of the remaining areas you have requested. . . . We are still looking into the last area you have requested and hope to be able to address by the end of the week."  (*Id.*)  Defendant's counsel sent a letter to Plaintiffs' counsel on March 16, 2010, confirming the arrangements for the depositions.  (*Id.*)  The letter confirmed that Greg Messacar would be the corporate designee for topics one through four and that Mr. Messacar would be deposed on March 24, 2010, in Detroit.  (*Id.*)  The letter also confirmed that Bonnie Handke would be the corporate designee for area 5 and that Valerie Gunderson

4

would be the corporate designee for topics six through eight.  (*Id.*)  These depositions were scheduled for April 7, 2010, in Minneapolis.  (*Id.*)

On March 26, 2010, Plaintiffs' counsel sought to add four additional topics to the April 7, 2010 depositions.  (*Id.*)  Defendant's counsel agreed and designated persons to address the additional topics.  (*Id.*)  On April 1, 2010, Plaintiffs served a "First Amended Notice of Taking Deposition of Medtronic, Inc.," which included a "30(b)(6) Addendum." (Pls.' Mot. Ex. I.)  The addendum added four topics, including the following topic which is one of the subjects of the present motions:

> A description of the process by which Medtronic received and processed orders for Medtronic Refill Kits - Model 8551 - in 2005 (or the process generally if the same for all Medtronic products), from receipt of a verbal or written order, through the generation of all written or electronic documentation regarding that order, through the shipping of the product to the end customer.

(*Id.*)

During the depositions on April 7, 2010 in Minneapolis, Medtronic designated Valerie Gunderson to address topics six through eight of the notice of deposition.  (Pls.' Mot. Ex. J.)  After this designation, the following exchange occurred:

| [Plaintiffs' counsel]: | Just before we went on the record, I asked if this was going to be the last person.  Do we have somebody for 9? |
|---|---|
| [Defendant's counsel]: | No.  We can discuss that after Miss Gunderson's finished.  She's not going to be addressing area 9. |
| [Plaintiffs' counsel]: | Well, whether it's Ms. Gunderson or somebody else, I mean, I spent a lot of money to come here to Minnesota to finish this.  Are we going to have somebody for topic 9? |

| [Defendant's counsel]: | No.  We're going to be filing a motion for a protective order with respect to that area.  That is, I believe – and we've discussed this before.  I believe that is an opinion work product area and I don't think it's appropriate, and I don't think it's possible for us to answer in the form of a corporate designee deposition.  We would, however, be willing to answer a contention interrogatory that covers the same area, so you can get to the same discovery without having to produce somebody.  Inevitably, it would have to be a lawyer who would have to testify about that area.  We just cannot get into the opinion work product.  Okay? |
| [Plaintiffs' counsel]: | Well, it's not okay, but there's no need for you and I to spend time enriching the court reporter. |

(*Id.*)

Six days later, on April 13, 2010, Defendant filed a motion for a protective order, and on April 19, 2010, Plaintiffs filed a motion to compel.

## II.  DISCUSSION[2]

In its motion for a protective order, Defendant takes issue with topic nine of the notice of deposition, which seeks "[a]n explanation of why Medtronic declined to participate in settlement discussions in the underlying Cober litigation when invited to do so."  (Def.'s Mot. Ex. D)  Defendant argues that this subject matter is protected by the attorney-client privilege and the attorney work product doctrine and is not reasonably

---

[2] The parties' briefs reveal a certain amount of fairly unseemly sniping between counsel (*see,* e.g., Pls.' Mot. Br. at 13-14; Def.'s Resp. at 9 n.3.)  Sharp criticism that verges on *ad hominem* does not impress a reasonably experienced judge; it diminishes the author.  In addition, footnotes set forth in microscopic font size, *see, e.g.,* Def.'s Resp. nn. 1-7, with nearly 20 characters per inch, being inconsistent with the Local Rules, *see* E.D. Mich. LR 5.1(a), are aggravating to read and tempt the judge to simply ignore them.

calculated to lead to the discovery of admissible evidence.  (Def.'s Mot. Br. at 3-8.)
Defendant asserts that, to the extent this information is discoverable, Plaintiffs should
be limited to contention interrogatories.  (*Id.* at 8-11.)

In their motion to compel, Plaintiffs argue that Defendant failed to comply with
Federal Rule of Civil Procedure 30(b)(6) when it designated persons who were not fully
prepared and knowledgeable for topics six, seven, and addendum topic two, and failed
to designate a person to testify concerning topic nine.  (Pls.' Mot. Br. at 5-9.)  Plaintiffs
also argue that Defendant's motion for a protective order is untimely and that Defendant
cannot rely on the attorney-client privilege and the work product doctrine to refuse to
designate a person to testify concerning topic nine.  (*Id.* at 9-13.)  Plaintiffs request
sanctions pursuant to Federal Rule of Civil Procedure 37(d).  (*Id.* at 13-16.)

### A.  Motion for Protective Order

The court may limit discovery through a protective order under Federal Rule of
Civil Procedure 26(c).  Rule 26 states in relevant part:

> A party or any person from whom discovery is sought may move for a
> protective order in the court where the action is pending . . . . The motion
> must include a certification that the movant has in good faith conferred or
> attempted to confer with other affected parties in an effort to resolve the
> dispute without court action.

Fed. R. Civ. P. 26(c)(1).

The typical purpose of a protective order is to protect "a party or person from
annoyance, embarrassment, oppression, or undue burden or expense."  *Id.*  These
purposes may be extended to encompass the overall limit of Federal Rule of Civil
Procedure 26—that the matter must be relevant to a claim or defense.  *White Mule v.
ATC Leasing Co. LLC*, No. 3:07CV00057, 2008 WL 2680273, at *4 (N.D.Ohio June 25,

7

2008); *Mayes v. City of Oak Park*, No. 05-cv-74386, 2007 WL 187941 (E.D. Mich. Jan.

22, 2007). To obtain a protective order, however, the movant must establish good

cause. *White Mule*, 2008 WL 2680273 at *4; *Nix v. Sword*, 11 F. App'x 498, 500 (6th

Cir. 2001) (per curiam). Good cause is established with "specific facts showing 'clearly

defined and serious injury' resulting from the discovery sought and cannot rely on mere

conclusory statements." *Nix*, 11 F. App'x at 500 (quoting *Avirgan v. Hull*, 118 F.R.D.

252, 254 (D.D.C. 1987)).

Although Fed. R. Civ. P. 26(c) does not provide a deadline for filing a motion for

protective order, most federal courts require a motion for protective order to be filed

prior to the scheduled date of the deposition. *See In re Air Crash Disaster,* 130 F.R.D.

628, 630 (E.D. Mich. 1989) ("In most circumstances, objections must be filed before the

date of the deposition.")*; see also Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 413

(M.D.N.C. 1991) ("A motion for a protective order is timely if made prior to the date set

for producing the discovery."); 24 Charles Alan Wright & Arthur R. Miller, *Federal

Practice and Procedure* § 2035 ("At least with regard to depositions, the order should

ordinarily be obtained before the date set for the discovery . . . ."). Failure to move by

that point precludes later objection. *In re Air Crash Disaster,* 130 F.R.D. at 630; *see

also Bregman v. District of Columbia*, 182 F.R.D. 352, 355 (D.D.C. 1998) ("[Defendant]

has been fully advised of the topics of the deposition and . . . unless it seeks and

secures a protective order in advance, [the court] will not entertain its objection . . . .");

24 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2035.

Defendant's motion for protective order was not filed in a timely manner. *See In

re Air Crash Disaster*, 130 F.R.D. at 630. Although Defendant had been aware for two

8

to three months before the April 7, 2010 depositions in Minneapolis that Plaintiffs intended to probe topic nine, they did not file their motion until a week after the deposition date.  (*See* Pls.' Reply Ex. A (showing that Defendant knew of Plaintiffs' interest in topic nine as of January 22, 2010).)  Defendant did not designate a person for topic nine in its March 16, 2010 letter confirming the arrangements for the upcoming depositions, but the correspondence between counsel reveals that Defendant never conclusively conveyed an intent to not produce a witness on this subject.  In the last correspondence attached to the briefs addressing the topic, Defendant's counsel stated he was looking into it and hoped to address it by the end of the week of March 3, 2010. (Def.'s Resp. Ex. E.)  However, no action was taken until Defendant's counsel announced near the conclusion of the Minneapolis deposition that Defendant would not designate a witness for topic nine and would instead file a motion for protective order. The obvious result of this decision, timed as it was, would be to require Plaintiffs' counsel to make a second trip to Minneapolis if Defendant's objection were to be overruled.  Defendant had ample time before the Minneapolis depositions to seek a protective order but did not do so.

Accordingly, Defendant's motion for a protective order is denied.

**B.  Motion to Compel**[3]

Under Federal Rule of Civil Procedure 30(b)(6), a party may name a corporation

as the deponent, who in turn must designate one or more persons to testify on its

behalf.  Fed. R. Civ. P. 30(b)(6).  The deposing party must describe with reasonable

particularity the matters for examination.  *Id.*  "Once notified as to the reasonably

particularized areas of inquiry, the corporation then 'must not only produce such number

of persons as will satisfy the request, but more importantly, prepare them so that they

may give complete, knowledgeable and binding answers on behalf of the corporation.'"

*Beattie v. Centurytel, Inc.*, No. 02-10277, 2009 WL 5066676, at *6 (E.D. Mich. Dec. 16,

2009) (quoting *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C.

1989)).

Federal Rule of Civil Procedure 37 allows the court to compel a deponent to

answer questions asked of the deponent.  The Rule states: "A party seeking discovery

may move for an order compelling answer, designation, production, or inspection.  This

---

[3] Defendant argues that Plaintiffs' motion to compel should be denied because Plaintiffs failed to comply with the conference requirements of Fed. R. Civ. P. 37(a)(1) and Local Rule 37.1.  (Def.'s Resp. at 7-8.)  Plaintiffs' motion states that "[p]ursuant to L.R. 7.1 counsel for Plaintiffs sent the email communication attached as Exhibit A in an effort to resolve this matter without the necessity of a Motion."  (Pls.' Mot. at 2.)  The email attached as Exhibit A sets forth why Plaintiffs did not believe that Defendant properly complied with the Rule 30(b)(6) notice and sought concurrence in striking defenses and producing additional designees for deposition in Michigan.  (Pls.' Mot. Ex. A.)  Defendant apparently sent a fax not concurring in the relief requested.  (Pls.' 4/21/10 Notice of Errata Statement.)  Based on the circumstances of the case and the exchanges between counsel, the court concludes that Plaintiffs have sufficiently complied with the good faith conference requirement of Fed. R. Civ. P. 37(a)(1) and Local Rule 37.1.

motion may be made if: (i) a deponent fails to answer a question asked under Rule 30 or 31." Fed. R. Civ. P. 37(a)(3)(B)(I).

### 1. Topic Six, Topic Seven, and Addendum Topic Two

Plaintiffs argue that Defendant failed to comply with Rule 30(b)(6) when it designated persons who were not fully prepared and knowledgeable for topic six, topic seven, and addendum topic two. (Pls.' Mot. Br. at 5-9.) Defendant argues that it did produce appropriate and prepared witnesses for the Rule 30(b)(6) depositions and that based on its offer to provide additional information and witnesses, Plaintiffs' motion is moot. (Def.'s Resp. at 8-9, 14-18.)

The court agrees with Defendant that Plaintiffs' motion is moot. Although Defendant's initial designees on these topics could have been better prepared, Defendant has provided a stipulation answering the questions that Ms. Gunderson could not answer and proffering additional witnesses to address these topics. (Pls.' Reply Ex. B; Def.'s Resp. at 8-9, 17-18.) Defendant's efforts to resolve the areas of dispute regarding topic six, topic seven, and addendum topic two have rendered Plaintiffs' motion to compel with respect to these topics moot.

### 2. Topic Nine

Defendant objects to discovery concerning topic nine based on the attorney-client privilege and attorney work product doctrine. (Def.'s Mot. Br. at 4-7; Def.'s Resp. at 9-12.) Defendant asserts that discovery on this topic should be conducted via contention interrogatory. (Def.'s Mot. Br. at 8-11; Def.'s Resp. at 9-12.) Plaintiffs argue that Defendant's objection based on the attorney-client privilege and work product doctrine is baseless because Plaintiffs are not seeking "testimony on counsel's advice,

11

counsel's mental impressions or strategy."  (Pls.' Mot. Br. at 11-13.)  Instead, Plaintiffs

contend that they are seeking "to gain information regarding Medtronic's business

decision to decline to participate in settlement discussions in the underlying Cober

litigation and the basis for Medtronic disputing 'the factual assertions' in Plaintiffs' letter

inviting Medtronic to participate in settlement."  (*Id.*)

      In civil actions in which the law of the state provides the elements of a claim or

defense, "the privilege of a witness, person, government, State, or political subdivision

thereof shall be determined in accordance with State law."  Fed. R. Evid. 501.  Because

this case is before the court on the basis of diversity jurisdiction, Michigan law governs

an assertion of privilege.  Mich. R. Evid. 501.

      The attorney-client privilege, although narrow in scope, is designed to allow "full

and frank communication between attorneys and their clients and thereby promote

broader public interests in the observance of law and administration of justice."  *Leibel*

*v. Gen. Motors Corp.*, 646 N.W.2d 179, 184 (Mich. Ct. App. 2002).  Under Michigan law,

> [t]he attorney-client privilege attaches to direct communication between a
> client and his attorney as well as communications made through their
> respective agents.  The scope of the attorney-client privilege is *narrow*,
> attaching only to *confidential communications* by the client to his advisor
> that are made *for the purpose of obtaining legal advice.*

*Leibel*, 646 N.W.2d at 183 (emphasis added).

      The privilege cannot protect from disclosure the actual facts underlying the

information contained in a communication between attorney and client; the privilege

protects only confidential communications between attorney and client.  *Reed Dairy*

*Farm v. Consumers Power Co.*, 576 N.W.2d 709, 712 (Mich. Ct. App. 1998) ("Thus,

clients and their agents must disclose on request any relevant fact within their

12

knowledge even if it incorporated a statement of that fact into a communication to the attorney.") (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981)).

The work product doctrine "is designed to allow an attorney to 'assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference . . . to promote justice and to protect [his] clients' interests.'" *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 294 (6th Cir. 2002) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)) (alteration in original).  It protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" unless the party shows "substantial need" and "undue hardship."  Fed. R. Civ. P. 26(b)(3)(A).  "However, absent waiver, a party may not obtain the 'opinion' work product of his adversary; i.e., 'any material reflecting the attorney's mental impressions, opinions, conclusions, judgments, or legal theories.'" *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d at 294 (quoting *In re Antitrust Grand Jury*, 805 F.2d 155, 163-64 (6th Cir. 1986)).

The burden to show that a matter is not discoverable rests upon the party asserting the privilege.  *See id.*  To demonstrate privilege or work-product protection, the Federal Rules of Civil Procedure require the party asserting privilege or protection to "describe the nature of the documents, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A)(ii).

As discussed above, Defendant's objection to topic nine is untimely.  Moreover, Defendant has not carried its burden of demonstrating that the attorney-client privilege

13

or work product doctrine applies. *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d at 294. All decisions by a company relating to a legal issue are not necessarily off limits to later discovery. The company must show that the requirements for the attorney-client privilege or work product doctrine are met, and Defendant has failed to carry its burden, particularly with respect to the *facts* it relied upon when deciding not to participate in the settlement negotiations in the Cober Litigation.

The court is confident that questions can be posed to a corporate designee in a manner designed to address the *business decision* of Defendant, and that the answers to such questions will neither impinge on the communications protected by the attorney-client privilege nor reach material protected by the work product doctrine.

The court will also overrule Defendant's relevance objection to topic nine. Under the Federal Rules of Civil Procedure discovery is generally broad and generous. *See Conti v. Am. Axle and Mfg., Inc.*, 326 F. App'x 900, 904 (6th Cir. 2009). Federal Rule of Civil Procedure 26(b) governs the scope of discovery, which extends to "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

The elements of a contribution claim by a settling tortfeasor are:

(1) there must be joint liability on the part of the plaintiff and defendant, (2) the plaintiff must have paid more than the plaintiff's pro-rata share of the common liability, (3) the settlement entered into by the plaintiff must extinguish the liability of the defendant, (4) a reasonable effort must have been made to notify the defendant of the pendency of the settlement negotiations, (5) the defendant must be given a reasonable opportunity to

14

participate in settlement negotiations, and (6) the settlement must be
made in good faith.

*Klawiter v. Reurink*, 492 N.W.2d 801, 803 (Mich. Ct. App. 1992) (per curiam).  The

question of whether Defendant was given reasonable notice and opportunity to

participate in the settlement negotiations is determined under an objective test, but the

jury will necessarily have to evaluate reasonableness in light of the facts and

circumstances of this particular case, particularly Defendant's participation in the Cober

litigation.  Discovery regarding the reasons behind Defendant's business decision to

refuse to participate is reasonably calculated to lead to information bearing on whether

Defendant was given reasonable notice and a reasonable opportunity to participate.

Defendant argues that this discovery is more properly conducted through

contention interrogatories instead of a Rule 30(b)(6) deposition.  Although some cases

have required the use of contention interrogatories, *see, e.g.*, *SEC v. Morelli*, 143

F.R.D. 42 (S.D.N.Y. 1992), the court does not believe they are necessary in this case,

*see Security Ins. Co. of Hartford v. Trustmark Ins. Co.*, 218 F.R.D. 29, 33-34 (D. Conn.

2003); *United Technologies Motor Systems, Inc. v. Borg-Warner Automotive, Inc.*, No.

Civ.A. 97-71706, 1998 WL 1796257 (E.D. Mich. Sept. 4, 1998) (rejecting plaintiff's

argument that the information sought would be better obtained through contention

interrogatories as opposed to a Rule 30(b)(6) deposition).  In essence, Defendant has

already provided Plaintiffs with an answer to a contention interrogatory in its May 27,

2008 letter informing Plaintiffs that it was not going to participate in the settlement

negotiations.  (Def.'s Mot. Ex. B.)  Plaintiffs should have the opportunity to more fully

15

probe this response using the traditional method for ascertaining facts in the litigation process—examination of a witness.  Accordingly, Plaintiffs' motion to compel is granted.

### C.  Rule 37 Sanctions

Plaintiffs have also requested that the court sanction Defendant pursuant to Federal Rule of Civil Procedure 37(d).  (Pls.' Mot. Br. at 13-16.)  Plaintiffs request "all reasonable and necessary costs in connection with any and all subsequent Rule 30(b)(6) depositions related to the aforementioned topics."  (*Id.* at 16.)

Federal Rule of Civil Procedure 37(d) allows a court to order sanctions when a party fails to appear for Rule 30(b)(6) deposition.  When ordering sanctions, the court is required to order "the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(d)(3).

Neither Defendant's lack of preparation for topic nine nor its broad assertion of the attorney-client privilege and work product doctrine was "substantially justified." *See* Fed. R. Civ. P. 37(d)(3).  Defendant offered only bald assertions regarding attorney-client privilege and work product and provided virtually no factual basis as to communications between attorney and client, even though it was Defendant's burden to demonstrate privilege.  Finally, no other circumstances exist which would render an award of expenses unjust.  *See id.*  Accordingly, the court will order Defendant to pay Plaintiffs' counsel's reasonable travel expenses for having to return to Minneapolis to conclude the Rule 30(b)(6) deposition.  *See id.*; *Beattie*, 2009 WL 506676, at *7 (holding

16

that "compensating the plaintiffs' attorneys for their travel expenses would provide

adequate compensation and a sufficient deterrence under the present circumstances").

### III.  CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendant's "Sealed Motion

for a Protective Order" [Dkt. # 31] is DENIED, and Plaintiffs' "Sealed Motion for

Discovery Sanctions and to Compel Discovery" [Dkt. # 33] is GRANTED.

IT IS FURTHER ORDERED that Defendant shall pay Plaintiffs' counsel's

reasonable travel expenses to return to Minneapolis to finish the Rule 30(b)(6)

deposition.  Within **seven days** of the deposition, Plaintiffs' counsel shall present his

reasonable bill of costs for this matter to Defendant.  Within **seven days** thereafter,

Defendant shall pay the amount, or should there be any objections, file the objections

and the accompanying bill with the court.


 S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  June 18, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 18, 2010, by electronic and/or ordinary mail.

 S/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522